UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GRAPHIC DESIGN MARKETING, INC.,

    Plaintiff,

v.                                                                                    Case No. 11-C-0051

XTREME ENTERPRISES, INC., and
LAWRENCE E. JOHNSON,

    Defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**I. Procedural History**

1. On January 18, 2011, Plaintiff Graphic Design Marketing, Inc., ("GDM") filed this action for copyright infringement, trafficking in counterfeit labels, trade dress infringement, and unfair competition against Defendants Xtreme Enterprises, Inc. ("Xtreme") and Lawrence E. Johnson ("Johnson") alleging that Defendants were making, marketing, distributing and selling novelty vinyl stickers for which GDM held valid copyrights and, in addition, that Xtreme was using virtually identical packaging to the copyrighted packaging used by GDM. At the same time, GDM filed a motion for a preliminary injunction requesting that the Court enter an order (1) prohibiting the defendants from further manufacture or distribution of infringing goods; (2) requiring the defendants to issue a Notice of Recall directing the return of all infringing goods currently in the possession of retail outlets and notifying all retail outlets that purchased infringing goods from Xtreme that the further distribution of such goods gives rise to liability for contributory

infringement; and (3) impounding all infringing goods in defendants' possession. The Court conducted a hearing on GDM's motion on February 4, 2011, and based on the arguments presented and the affidavits and briefs on file, hereby grants GDM's motion in part.

2. Since 2000, GDM has been in the business of, among other things, marketing and distributing weather resistant vinyl decals to retailers for sale to consumers. These decals are used on, for example, a vehicle window or bumper, and comprise one of a number of phrases or pictures. At retail, the decals are displayed in a transparent bag with a distinctive header card that hangs on the peg of a rack. GDM decals, along with the associated header cards and racks, most often appear in truck stops, convenience stores, and the like. The suggested retail price is $5.99 and the decals are considered an impulse purchase.

3. Although GDM claims that many of its more than 400 decals are protected by copyright, the present motion is concerned primarily with the actions of Xtreme, GDM's former distributer, in copying and use of GDM's header for Xtreme's packaging and sale of its own decals. The evidence establishes without dispute that Xtreme began selling its own decals to the stores where it previously distributed GDM's decals using almost exact copies of GDM's black header with the word "STICKERS" in white letters in a distinctive font outlined in black and red (hereinafter "the red header"). The red header also contained descriptive language and instructions in smaller type on the bottom and the back. The back also includes a copyright notice identifying Graphic Design Marketing, Inc., and a Universal Product Code ("UPC") symbol identifying GDM as the source of the product. It is clear from viewing the headers of GDM's product and Xtreme's that Xtreme simply copied GDM's red header to use for packaging and selling its own products. Although Xtreme contends that it voluntarily discontinued its production of copies of GDM's

headers for packaging its own products in October, GDM is not required to accept Xtreme's assurances. Moreover, some of Xtreme's products bearing the counterfeit red GDM headers likely still remain for sale in the retail stores where Xtreme distributes its decals. It is the manufacture and use by Xtreme of the counterfeit GDM red headers that is addressed herein.

## II. Legal Standard Governing Preliminary Injunctions

4. In deciding whether to grant a motion for a preliminary injunction, the Court must consider four factors: 1) likelihood of success on the merits; 2) irreparable harm if an injunction is not granted; 3) the balance of hardships; and 4) the impact on the public interest. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir. 1994). When applying this standard to requests for preliminary injunctive relief, the Seventh Circuit has adopted a "sliding-scale" approach, under which the stronger the case is on its merits, the less irreparable harm must be shown. *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 12 (7th Cir. 1992).

## III. Copyright Claim

5. To establish a reasonable likelihood of success on the merits in a copyright case, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of original elements of the work. *Feist Publications, Inc. v. Rural Telephone Service Co.,* Inc., 499 U.S. 340, 361 (1991). GDM's registration certificates provide prima facie evidence of the first element with respect to GDM's copyright its package red header.

6. GDM is the owner of U.S. Copyright Reg. No. VA 1-750-576, effective December 16, 2010, directed to the "Stickers" package header card. (Complaint, Ex. 1.)

7. Under the Copyright Act, a certificate of registration obtained within five years of first publication establishes a presumption of ownership of a valid copyright. 17 U.S.C. § 410(c). Here, however, GDM's registrations were obtained more than five years after first publication. GDM began manufacturing and selling novelty stickers in 2000. (Decl. of Bradley Czyzewski at ¶ 3.) In such cases, the "evidentiary weight to be accorded the certificate . . . shall be within the discretion of the court." 17 U.S.C. § 410(c); *See Yurman Design, Inc. v. Golden Treasure Imps., Inc.,* 275 F. Supp. 2d 506, 515-516 (S.D.N.Y. 2003) (certificates of registration issued more than five years after works were first published are prima facie evidence of valid copyrights); *Telerate Sys., Inc. v. Caro,* 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) ("Even if the certificate were . . . issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). Here I conclude that GDM's copyrighted "Stickers" red header is prima facie evidence of a valid copyright, even though the copyright was obtained ten years after first publication.

8. The packaging red "headers" on the Xtreme stickers are identical in every respect to the GDM package header that is the subject of the '576 registration except for two minor differences: the color in the center of the letter "R" and the spelling of the word "adhere." (Complaint, Figure 2.) This is sufficient to show that GDM will likely succeed in proving that Xtreme copied its header. *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1179 (7th Cir. 1997) (Copying can be proven by showing "two works are so similar as to make it highly probable that the later one is a copy of the earlier one"); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.,* 329 F.3d 923, 926 (7th Cir. 2003) ("[W]hen the similarities concern details of such an arbitrary character that

the probability that the infringer had duplicated them independently is remote, an inference of copying may be drawn without any additional evidence.").

9. GDM also seeks to enjoin further manufacture and use of Xtreme's modified or green header. The modified header differs from GDM's in that the outline is in green and Xtreme identifies itself as the source of the decals. The Court reserves ruling on this version of the header until the defendants have a further opportunity to respond to GDM's motion.

10. Xtreme and Johnson both had access to the copyrighted GDM red header. Both Defendants had access because the GDM stickers are available to the general public. Xtreme had special access because it was a distributor for GDM.

11. In light of the above factors I conclude that GDM has a strong likelihood of success on its copyright claim against Xtreme.

### IV. Trafficking in Counterfeit Labels Claim

12. GDM is likely to succeed on its claim under 18 U.S.C. §§ 2318.

13. That statute makes it a crime to knowingly traffic in a counterfeit label accompanying a work of visual art, and the criminal statute expressly provides for a civil remedy in case of a violation. 18 U.S.C. §§ 2318(a)(1)(A)(vi) and (e)(1). The statute defines a counterfeit label as "an identifying label or container that appears to be genuine, but is not," 18 U.S.C. § 2318(b)(1), and defines "traffic" as "to transport, transfer or otherwise dispose of, to another, for purposes of commercial advantage." 18 U.S.C. §§ 2318(b)(2) and 2320(e).

14. The red headers on Xtreme's stickers are "an identifying label." The red headers appear to be those of genuine GDM stickers, but they are not. *See United States v. Teh,* 535 F.3d

511, 520 (6th Cir. 2008) (DVD labels that "appeared to be 'home made[,]' were of poor quality, contained misspellings[,] and were not centered" appeared to be genuine, but were not, and were thus counterfeit labels (first alteration in original)). The back of the Xtreme labels include the exact same "Graphic Design Marketing, Inc." name and UPC barcode as genuine GDM labels. *See Microsoft Corp. v. Pronet Cyber Technologies, Inc.,* 593 F. Supp.2d 876, 882 (E.D. Va. 2009) (defendant "knowingly made his own labels and included what he believed were Microsoft Product Keys on those labels.").

15. GDM has demonstrated a strong likelihood, if not a certainty, that Xtreme has trafficked the counterfeit labels by selling its decals to retail outlets using an almost exact copy of GDM's red header in its packaging.

### V. Lanham Act/Trade Dress Claim

16. The Seventh Circuit has defined trade dress as: "the total image of a product, including such features as "size, shape, color or color combinations, texture, graphics or even particular sales techniques." *Kohler Co. v. Moen, Inc.,* 12 F.3d 632, 641 n. 11 (7th Cir. 1993); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 935 (7th Cir. 1989) (quoting *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 980 (11th Cir. 1983)), *cert. denied,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). Therefore, to prevail on its trade dress infringement claim, GDM must demonstrate that: (1) the overall image of its stickers' trade dress is "inherently distinctive" or has acquired "secondary meaning"; and (2) the similarity of Xtreme's trade dress to Plaintiff's trade dress creates a "likelihood of confusion" on the part of customers as to source*, see Storck*

6

*U.S.A., L.P. v. Farley Candy Co.,* 14 F.3d 311, 314 (7th Cir. 1994); *Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1151 (7th Cir. 1994).

17. Here GDM has a strong likelihood of success on its Lanham Act claim because the GDM packaging is inherently distinctive and because there is a clear likelihood of confusion between the stickers sold by GDM and Xtreme. The packaging is inherently distinctive because the "stickers" red header uses stylized white lettering edged in red against a totally black background, with further descriptive language in a standard white font. The likelihood of confusion is great where, as here, the packaging is virtually indistinguishable.

### VI. Irreparable Harm

18. "Irreparable injury may normally be presumed from a showing of copyright infringement." *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7th Cir. 1982). Where damages will be extremely difficult to calculate and prove injunctive relief is appropriate to prevent the damage from occurring. *General Leaseways, Inc. v. National Truck Leasing, Ass'n.,* 744 F.2d 588, 591 (7th Cir. 1984).

19. GDM is likely to suffer irreparable harm if Defendants are allowed to unfairly compete with GDM by selling a product in copied packaging. The fact that Defendants offer a virtually identical product inevitably weakens GDM's negotiating position with its customers. It is also unlikely that GDM will simply be able to recapture its relationship with its customers if Xtreme is allowed to continue to sell infringing or slightly modified product to the vendors.

20. GDM will suffer lost good will and reputation if Defendants are not enjoined as requested. Such damages are hard to measure. *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6,

7

16 (7th Cir. 1992) ("it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill"). Injunctive relief is therefore appropriate because any other remedy at law would require too speculative a calculation of damages. Injunctive relief stops the damage – which is hard to measure – from happening in the first place.

## VII. Other Factors

21. The balance of harms also tips in GDM's favor assuming a likelihood of success on the merits.

22. The public interest would also favor granting an injunction if GDM was likely to succeed on the merits, since there is a critical interest in properly labeling goods and no countervailing public interest at risk that would outweigh GDM's interest in preventing Xtreme from selling goods under its label and copyrighted header. The public interest is also served by preventing confusion in the marketplace that inevitably results from Xtreme's unauthorized use of GDM's copyrighted header.

## VIII. ORDER

23. GDM has demonstrated that it has a reasonable likelihood of success on the merits on its claim against Xtreme and Johnson relating the Xtreme's manufacture and distribution of goods packaged with GDM's copyrighted red header bearing the word "STICKER" outlined in red. Xtreme's use of GDM's header constitutes copyright infringement, counterfeit labeling and a violation of the Lanham Act. GDM has also established that it will suffer irreparable harm if an injunction is not granted, the balance of hardships lies in its favor, and the public interest will be

furthered by affording meaningful protection to its copyright rights and protection from counterfeit labeling and market confusion. Because the other factors are all in favor of granting the preliminary relief GDM seeks, GDM's motion for a preliminary injunction will be granted. Xtreme is hereby prohibited from any further manufacture or use of GDM's red header. Further, Xtreme and/or Johnson are to issue a Recall Notice to retail outlets where they sold Xtreme decals under the counterfeited version of GDM's red header directing the return of all such goods and notifying such retailers that further distribution of such goods may give rise to liability for contributory infringement. So as to minimize the risk that retailers will remove GDM's products from their stores, as well as the counterfeit labeled Xtreme products, the notice will include photos showing how to distinguish the Xtreme stickers subject to recall from the genuine GDM stickers as found in the brief supporting GDM's motion. Finally, all such counterfeit red headers in the defendants' possession are to be impounded and shall be retained by said defendants until further order of the Court.

24. Rule 65(c) states that the court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Defendants advised the Court that a reasonable bond in the event GDM's motion for a preliminary injunction was issued would be $7,000. The Court will therefore condition the issuance of the preliminary injunction on GDM's posting of a bond in such amount.

Dated this   7th   day of February, 2011.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge